**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

_____

| | |
|---|---|
| **LEE EDWARD GRAHAM, JR., SENIECE GRAHAM, and WILLIAM GRAHAM,** ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) | Case No. 04-2136 |
| **W.K. HILDEBRAND, WILLIAM M. LAWLER, JOHN F. BENNETT, and B. HILKE,** ) ) ) ) ) | |
| Defendants. ) | |

_____

**OPINION**
_____

On July 16, 2004, Plaintiffs Lee Graham, Seniece Graham, and William Graham, proceeding pro se, initiated this action pursuant to 42 U.S.C. § 1983. Following several rounds of motions to dismiss, only Defendants W.K. Hildebrand, William Lawler, John Bennett, and Barbara Hilke remain. The complaint centers around Plaintiffs' arrests following a incident in Charleston, Illinois. All of the remaining Defendants have filed Motions for Summary Judgment (#182, #184, #187, #188). Plaintiff William Graham has also filed a Motion to Voluntarily Dismiss (#195) his remaining claims against Defendants. The matters are now fully briefed.[1]  For the reasons that follow, Defendants' Motions for Summary Judgment are GRANTED and Plaintiff William

---

[1] On March 14, 2006, Lee and Seniece filed a Second Memorandum in Response to Defendants' Motion for Summary Judgment (#204), which was filed in response to Defendants' replies. Local Rule 7.1(D)(4) does not allow for the filing of a further response following the filing of a reply brief without leave of court. Accordingly, the Motion to Strike (#205) filed by Defendants Hildebrand, Lawler, and Bennett (#205) is GRANTED.

Graham's Motion to Voluntarily Dismiss (#195) is DENIED.

FACTS

The incidents which form the basis of this case occurred on September 25, 2003. On that date, Seniece, William and Lee, all of whom are siblings and African-American, went with some friends to a bar in Charleston, Illinois by the name of Stix. Seniece drove William's car, a white Chevy Caprice, to the bar and parked it outside the door at approximately 11:45 p.m. Lee arrived separately at Stix. Stix closed at 1 a.m., and the Grahams departed the bar. Lee, accompanied by his friend Nick Jefferson, walked to Jefferson's car in a nearby parking lot across the street from Stix. Lee was joined in the parking lot by Seniece and other friends. They noticed a crowd forming in the parking lots of two nearby restaurants, EL Krackers and La Bamba. Lee decided to go to La Bamba to get some food, and Seniece gave him some money for the food.

Around this time, Charles Spence, an African-American, allegedly hit a Caucasian woman by the name of Laura O'Donnell and yelled racial epithets at her. A significant number of people were in the area at the time of this incident due to the recent closing of the bars. As a result of this incident, the crowd, which was predominately Caucasian, became agitated and also began yelling racial epithets. The crowd began pushing and shoving and moved into the adjacent street, thus blocking the entrance to La Bamba. As Lee walked up to the entrance to La Bamba, he heard someone say, "He hit a girl!" Lee observed that the crowd's aggression was directed towards Charles Spence. Lee informed Charles he should leave before the situation got out of hand. Lee then proceeded into the restaurant. A friend of Lee's entered the restaurant and informed him he should go outside because something happened to Seniece. According to Seniece, a Caucasian man punched her in the jaw and she began arguing with him. Seniece testified in deposition that she

thought she struck the Caucasian man back.

Lee proceeded outside the restaurant and observed William exclaim, "Who the fuck hit my sister?" The crowd was responding with statements like, "Fuck your sister!" and, "Who give a fuck about your sister when this girl got hit by that nigger?" Lee asked William what happened, and William responded, "One of these motherfuckers hit Niece." Lee then started exclaiming, "Who the fuck hit my sister?" and, "Where is my sister?" The Charleston police then arrived. Lee and William found Seniece after she called out to her brothers that she was alright, but had been physically assaulted. William and Lee then went over to Seniece.

Officer Hildebrand of the Charleston Police Department noticed the crowd start to spill out into the street. Officer Hildebrand instructed Officer Lawler to stand with Charles Spence while he assisted in restraining the crowd. Officer John Bennett of the Charleston Police Department then approached William and asked him what the problem was. Officer Bennett attempted to calm Lee and William, and Lee testified that he yelled back at Bennett. Officer Bennett testified that Lee was lunging at people in the crowd. As a result, Officer Bennett attempted to place himself between Lee and the crowd. Lee informed Officer Bennett that Seniece had been struck by an individual in the crowd. Seniece moved closer to Officer Bennett to explain what happened, and Officer Bennett told her to step back. Officer Bennett then left the Grahams and walked across the street to talk to the crowd.

The crowd became louder and was pointing at the Grahams. Lee testified in his deposition that it appeared the police had lost control of the situation. After attempting to restrain the crowd, Officer Bennett returned to the Grahams. Officer Bennett puts his hands on Lee. Seniece testified she believed Bennett may have done this to attract Lee's attention. While Officer Bennett was

interacting with the Grahams, the crowd was pushing Bennett from behind. Lee testified that he, Seniece, and William were pushing back at the crowd. Officer Bennett was concerned that someone would attempt to disarm him and fire his weapon. Officer Bennett testified he attempted to talk to Lee from a field interview position, with his left hand at approximately a 90 degree angle. At that point, according to Officer Bennett, Lee pushed Bennett's hand away and pushed him backwards with both hands. Officer Bennett then told Lee he was under arrest, but Lee continued to stand his ground. Officer Bennett testified that Seniece got between him and Lee and pushed Bennett, telling him he was not going to arrest Lee.

When Lee failed to comply, Officer Bennett discharged his pepper spray. This was about the time Officer Hilke of the Eastern Illinois University Police Department arrived. Hilke told the crowd to get out of the street. Officer Lawler testified that he informed Lee he should comply with the instructions given him by Officer Bennett. At the time he made this statement, he was standing behind Lee with his hand in the small of Lee's back. Lee was cooperative after the pepper spray was dispersed. Officers Reed and Hildebrand assisted in handcuffing Lee.

Seniece was also affected by the pepper spray, and she began walking away. Officer Bennett repeatedly told Seniece to get down, but she did not comply. Seniece testified in her deposition that she was later struck in the knee with a baton or night stick by a male officer she could not identify. Officer Bennett placed Lee under arrest. Lee was handcuffed and placed in a patrol car by Officer Bennett. Officer Elam placed handcuffs on Seniece and Officer Lawler placed Seniece under arrest. Officer Lawler then walked Seniece to his squad car. Officer Elam placed Seniece in the car, then went to get some water to wash her eyes and face.

While Seniece was being walked to the police car, William became involved in a verbal

altercation with Lieutenant Hank Pauls. William indicated he was going to the police station to find out why Lee and Seniece had been arrested. Lieutenant Pauls told him he could not go. William told Pauls if he wanted to follow him that he could wait for William's white Caprice because he was going to drive it around the corner. Pauls told William that William was trying to "get all these people after me" then told William he was under arrest for mob action. Officer Hilke later met with witnesses in a nearby parking lot and took their statements. All of the witnesses interviewed regarding the events were Caucasian.

At a preliminary hearing held on October 20, 2003, probable cause was found to bind Lee over for trial on the charges of battery and resisting arrest. Following a jury trial, Lee was convicted of resisting arrest. Seniece Graham was charged with aggravated battery following a preliminary hearing, but was found not guilty by a jury. William was charged with and convicted of two counts of threatening a public official. William was sentenced to four and one-half years in the Illinois Department of Corrections.

## ANALYSIS

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, the court must decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In reaching this decision, the court must consider the evidence in the light most favorable to the party opposing summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-

59 (1970). The burden of establishing that no genuine issue of material fact exists rests with the movant. Jakubiec v. Cities Serv. Co., 844 F.2d 470, 473 (7th Cir. 1988). Furthermore, this court is to construe pro se filings liberally. Anderson v. Hardman, 241 F.3d 544, 545 (7th Cir. 2001).

### A. Probable Cause For Arrests

Plaintiffs' first claim under § 1983 is that there was not sufficient probable cause to sustain their arrests on September 25, 2003.[2] In their motions for summary judgment, Defendants raise the defense of qualified immunity. Government officials are shielded from liability insofar as their conduct does not violate clearly-established constitutional rights of which a reasonable person should have known. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Whether a defendant is entitled to a qualified immunity defense depends on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law." Kelley v. Myler, 149 F.3d 641, 648 (7th Cir. 1998). In this context, an officer is entitled to qualified immunity if a reasonable officer could have believed he had probable cause for the arrest. Sornberger v. City of Knoxville, 434 F.3d 1006, 1014 (7th Cir. 2006). "Probable cause exists if the totality of the facts and circumstances known to a reasonable arresting officer would support the belief that the suspect has committed or is committing a crime." Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004). The court evaluates probable cause "not from the perspective of an omniscient observer, but on the facts as they would have appeared to a reasonable person in the position of the arresting officer." Marshall v. Teske, 284 F.3d 765, 770 (7th Cir. 2002).

At the time when Plaintiffs were arrested, the situation was becoming increasingly dangerous

---

[2] This court need not address probable cause for William's arrest as there is no issue of material fact that Officer Pauls effectuated William's arrest, and Officer Pauls is not a defendant in this action.

as tensions rose between the crowd which has spilled into the street and the Grahams. Lee testified that he, along with Seniece and William, was pushing and shoving people in the crowd. Based upon this fact, a reasonable officer would have believed there was probable cause to arrest Plaintiffs for the offense of battery. See 720 Ill. Comp. Stat. 5/12-3. Furthermore, according to Officer Bennett, Lee pushed his hand away and pushed him backwards with both hands. Seniece failed to comply with instructions from officers at the scene. Furthermore, she stood between Officer Bennett and Lee, telling him he was not going to arrest Lee. Officer Bennett also testified that Seniece pushed him. Therefore, this court concludes Defendants are entitled to qualified immunity on the issue of probable cause for Plaintiffs' arrests because reasonable officers would have believed there was probable cause for the arrests of Lee and Seniece.[3]

## B. Excessive Force

Plaintiffs next claim Defendants used excessive force through use of pepper spray on September 25, 2003. The determination on an excessive force claim is determined based on whether the officers' actions were "objectively reasonable in light of the circumstances confronting them, without regard to their underlying intent or motivation." Smith v. City of Chicago, 242 F.3d 737, 743 (7th Cir. 2001). The court is to "consider the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively

---

[3] In addition, this court notes that, following a preliminary hearing, the state court found probable cause to bind over for trial Seniece on the charge of battery, Lee on the charges of battery and resisting arrest, and William on the charge of threatening a public official. The Seventh Circuit has found the doctrine of collateral estoppel applicable where a plaintiff challenges probable cause for an arrest after a state court determination at a preliminary hearing on the same issue. See Guenther v. Holmgreen, 738 F.2d 879, 887-88 (7th Cir. 1984). Furthermore, Lee was ultimately convicted of resisting arrest and William was ultimately convicted of threatening a public official following a jury trial.

resisting arrest or attempting to evade arrest by flight." Smith, 242 F.3d at 743. Furthermore, the court is "balance the amount of force used in relation to the danger posed to the community or to the arresting officers." Smith, 242 F.3d at 743.

Taking the circumstances from the officers' point of view and assessing the reasonableness of their actions objectively, this court concludes summary judgment is warranted in favor of Defendants. Officer Bennett was faced with an agitated group of people numbering between fifty and one hundred. The crowd was yelling racial slurs, and members of the crowd were trying to get to the Grahams who were pushing back at the crowd. Officer Bennett testified he was afraid he would be disarmed by a member of the crowd. Therefore, Officer Bennett was quite reasonably concerned with his own safety and the safety of those around him in a situation that appeared to be escalating. Furthermore, Lee was uncooperative when Officer Bennett attempted to place him under arrest, and Seniece got between Bennett and Lee when Bennett attempted to place Lee under arrest. Seniece was also noncompliant with demands from Bennett. Furthermore, Bennett simply expelled pepper spray in an attempt to bring Lee under control. This was a relatively minor amount of force to use in the face of the danger posed by an angry crowd and noncompliant individuals who were continuing to yell and shove at the crowd.[4] Plaintiffs further assert a claim against Defendants for failure to intervene with regard to their arrests and Officer Bennett's use of pepper spray. However, as discussed above, this court has determined there was no constitutional violation in either circumstance. As a result, Plaintiffs cannot sustain a claim for failure to intervene. See Fillmore v. Page, 358 F.3d 496, 506 (7th Cir. 2004).

---

[4] Seniece also believes she may have been hit in the leg with a baton, although she was not able to identify if this was done by an officer and, if so, which officer hit her. Therefore, this court finds insufficient evidence for Seniece to proceed with this claim against these Defendants.

C.  § 1985 Conspiracy Claim

Plaintiffs also assert a claim for civil conspiracy pursuant to 42 U.S.C. § 1985, asserting that Defendants essentially trumped up charges in a conspiracy to violate their constitutional rights based upon their race.  To succeed on this claim, Plaintiffs must show than an actual conspiracy existed, that its purpose was to deprive Plaintiffs of their constitutional rights, that an act was committed in furtherance of the conspiracy, and that Plaintiffs were injured.  Alexander v. City of South Bend, 433 F.3d 550, 556-57 (7th Cir. 2006).  Plaintiffs must also show that racial animus drove the conspiracy.  Alexander, 433 F.3d at 557.  This court has carefully reviewed the extensive exhibits in this matter and finds no evidence from which a reasonable jury could find the existence of a conspiracy.  Lee and William can hardly argue that their race was the basis for the charges against them where they were ultimately convicted following jury trials of resisting arrest and threatening a public official respectively.  In addition, Seniece testified in her deposition that she had no evidence that a conspiracy existed among Defendants.  Therefore, summary judgment is appropriate on this count.

D.  Equal Protection Claim

Plaintiffs bring a claim for violation of their equal protection rights, alleging Defendants arrested them and not Caucasian members of the crowd due to their race, African-American. Plaintiffs further allege Defendants took only the statements of Caucasians as to the events that took place on September 25, 2003.  "To show a violation of the Equal Protection Clause, plaintiffs must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose."  Chavez v. Illinois State Police, 251 F.3d 612, 635-36 (7th Cir. 2001). Plaintiffs have failed to present any evidence that racial considerations played a part in their arrests

other than asserting no Caucasians were arrested that night. However, Plaintiffs have not cited to specific individuals who engaged in similar conduct who were not African-American and were not arrested. As concerns the failure to take statements from African-Americans, Plaintiffs have not indicated any African-Americans attempted to give statements or were available to make statements, but Defendants refused to accept them. Accordingly, summary judgment is appropriate on this claim as well.

### E. State Law Claims

Plaintiffs make several other claims based upon what they allege to be their unlawful arrests. These claims include malicious prosecution, false arrest, and intentional infliction of emotional distress. To sustain a claim for malicious prosecution under Illinois law, Plaintiffs must demonstrate: "(1) the commencement or continuation of a legal proceeding by the defendants; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." Kincaid v. Ames Dep't Stores, Inc., 670 N.E.2d 1103, 1109 (Ill. App. Ct. 1996). Similarly, probable cause to arrest defeats any claim for false arrest. Kincaid, 670 N.E.2d at 1109. As discussed above, there was probable cause to arrest Plaintiffs on the charges. In fact, Lee and William were eventually convicted following a jury trial on the offense charged. While Seniece was acquitted, the state court found probable cause following a preliminary hearing to bind her over for trial. Accordingly, these claims must fail. In addition, Plaintiffs cannot sustain a claim for intentional infliction of emotional distress. Plaintiffs must demonstrate that Defendants engaged in conduct which was extreme and outrageous, that Defendants intended to inflict severe emotional distress or knew there was a high probability that their actions would cause severe emotional distress, and that Plaintiffs suffered

severe emotional distress. <u>Feltmeier v. Feltmeier</u>, 777 N.E.2d 1032, 1036 (Ill. App. Ct. 2002). Plaintiffs have introduced insufficient evidence to sustain any of these elements.

F. William's Motion to Voluntarily Dismiss

On February 10, 2006, William filed a letter which this court construed as a Motion to Voluntarily Dismiss Without Prejudice (#195). This court has discretion to deny a plaintiff's request to voluntarily dismiss a claim without prejudice. <u>Tolle v. Carroll Touch, Inc.</u>, 23 F.3d 174, 177 (7th Cir. 1994). Defendants have objected to the dismissal without prejudice. This case has been pending since July 16, 2004, and William filed this motion after motions for summary judgment had already been filed by Defendants. As discussed above, this court finds that the motions for summary judgment are appropriately granted. Therefore, in the exercise of its discretion and in the interest of justice, William's Motion to Voluntarily Dismiss Without Prejudice is DENIED.

IT IS THEREFORE ORDERED:

(1) The Motion for Summary Judgment as to Counts Brought by William Graham (#182) filed by Defendants Lawler, Hildebrand, and Bennett is GRANTED.

(2) The Motion for Summary Judgment as to Counts Brought by Lee Graham (#184) filed by Defendants Lawler, Hildebrand, and Bennett is GRANTED.

(3) The Motion for Summary Judgment as to Counts Brought by Seniece Graham (#188) filed by Defendants Lawler, Hildebrand, and Bennett is GRANTED.

(4) The Motion for Summary Judgment filed by Defendant Hilke (#187) is GRANTED.

(5) The Motion to Voluntarily Dismiss (#195) filed by William Graham is DENIED.

(6) The Motion to Strike (#205) filed by Defendants Lawler, Hildebrand, and Bennett is

GRANTED.

(7) The Final Pretrial Conference scheduled in this matter for May 26, 2006, and the jury trial scheduled to begin June 5, 2006 are VACATED.

(8) This case is terminated.

ENTERED this 31st day of March, 2006

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE